**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**GLENN LIVINGSTON,**

**Petitioner,**

**-vs-**                                                    **Case No.  8:04-cv-1566-T-27TBM**

**JAMES V. CROSBY, et al.,**

**Respondents.**

_____/

**ORDER**

Petitioner, a State of Florida inmate, initiated these proceedings *pro se* by filing a

Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Dkt. 1).  Petitioner is

challenging his 2000 conviction for battery upon an elderly person entered by the Sixth

Judicial Circuit Court, Pinellas County, Florida (Dkt. 1 at 2).  Respondent has filed a

response to the petition (Dkt. 18), and Petitioner has filed a reply (Dkt. 23). The matter is

now before the Court for consideration of the merits of the petition.

**Background**

Petitioner was charged by Information on October 15, 1999, with battery on a person

65 years of age or older (Dkt. 15, Ex. 18, Vol. I at R. 3). Represented by court-appointed

counsel, Petitioner proceeded to a trial by jury on a second  amended Information charging

him with aggravated battery on an elderly person, a first degree felony, on November 7,

2000. Having been found guilty of the lesser included offense of battery on an elderly

person, a third degree felony, Petitioner was sentenced as an habitual felony offender to

a term of 10 years in prison. Upon determining that Petitioner qualified for sentencing as

a prison releasee reoffender, the state trial court also imposed a term of 5 years under the

Prisoner Releasee Reoffender Punishment Act ("PRRPA")[1] (Dkt. 15, Ex. 18, Vol. I at R. 187).

Represented by a special assistant public defender, Petitioner raised the following issues on direct appeal:

1.    [Petitioner] was denied his right to a speedy trial when the State amended the Information and filed a notice for an enhanced sentence on the day [Petitioner] was originally scheduled for trial; and

2.    The trial court erred in failing to grant [Petitioner's] motion for a directed verdict.

Dkt. 15, Ex. 12 at 2.  The state district court affirmed Petitioner's conviction and sentence in a per curiam decision entered on February 1, 2002, with the mandate issuing on March 1, 2002.  *See Livingston v. State*, 810 So.2d 940 (Fla. 2d DCA 2002) (table decision).

On September 20, 2002, Petitioner filed an application for state post-conviction relief pursuant to Fla. R. Crim. P. 3.850 raising six grounds for relief that incorporated several subclaims (Dkt. 15, Ex. 19). The state trial court entered an order on March 13, 2003, summarily denying all but one of Petitioner's claims, and directed the State to respond to Petitioner's assertion that trial counsel was ineffective in failing to present the testimony of three named witnesses Petitioner asserted would present testimony relevant to his claim of self-defense (Dkt. 15, Ex. 20). According to Petitioner, he filed an "Amended Motion for Post-Conviction Relief" on April 18, 2003, to clarify the claim previously rejected by the state trial court that trial counsel was ineffective for failing to call six witnesses on his behalf (Dkt. 23, Appx. A).  On April 25, 2003, the state trial court entered an order denying the

---

[1]The PRRPA provides that defendants who commit certain enumerated crimes within three years of being released from a state prison are subject to certain enhanced sentences. *See* Fla. Stat. § 775.082 (1999). In this case, Petitioner's offense of conviction, a third degree felony, was punishable by 5 years imprisonment under the PRRPA. *See* Fla. Stat. § 775.082(3)(d).

remaining ground (Dkt. 15, Ex. 22). In a per curiam decision entered without written opinion, the state district court affirmed the state trial court's decision on December 10, 2003. *Livingston v. State*, 869 So.2d 554 (Fla. 2d DCA 2003) (table decision). Petitioner's request for a rehearing was denied and the mandate issued February 4, 2004.

On June 9, 2003, while the appeal of his Rule 3.850 motion was pending, Petitioner filed a pro se petition for state habeas relief alleging that appellate counsel rendered ineffective assistance. (Dkt. 15, Ex. 31). The state district court denied the petition without written opinion on March 16, 2004 (Dkt. 15, Ex. 39). See *Livingston v. State*, Case No. 2D03-2648 (Fla. 2d DCA 2003) [no table available].

Petitioner filed a *pro se* motion to correct illegal sentence dated May 3, 2004, pursuant to Fla. R. Crim. P. 3.800(a). On May 26, 2004, the state trial court entered an order addressing the sentencing issues Petitioner raised, summarily denying the Rule 3.800(a) motion. The state district court affirmed the denial of Petitioner's Rule 3.800(a) motion on October 27, 2004. *See Livingston V. State*, 887 So.2d 341 (Fla. 2d DCA 2004).

Petitioner filed his petition for federal habeas relief pursuant to 28 U.S.C. § 2254 on July 6, 2004 (Dkt. 1). Respondent acknowledges that the petition is timely but argues that it should be denied because Petitioner has failed to make the showing necessary for relief under 28 U.S.C. §§ 2254(d)-(e). Having reviewed the record, the parties arguments, applicable statutes, and controlling case law, the Court agrees.

### Standard of Review

Pursuant to 28 U.S.C. § 2254(a), "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or

treaties of the United States." 28 U.S.C. § 2254(a). Where a state court initially considers the issues raised in the petition and enters a decision on the merits, 28 U.S.C. § 2254(d) governs the review of those claims. *See Penry v. Johnson,* 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003).

Habeas relief may not be granted with respect to a claim adjudicated on the merits in a state court unless the adjudication of the claim:

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented  in the State court proceeding.

28 U.S.C. § 2254(d). *Price v. Vincent*, 538 U.S. 634, 638-39 (2003); *Clark v. Crosby*, 335 F.3d 1303, 1308 (11th Cir. 2003). Even where a state court denies an application for post-conviction relief without written opinion, in this circuit that decision is entitled to the same deference as if the state court had entered written findings to support its decision. *See Wright v. Sec. of Dept. of Corrs.*, 278 F.3d 1245, 1255  (11th Cir. 2002). Finally, a state court's factual finding is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Henderson*, 353 F.3d at 890-91.

### Evidentiary Hearing

The Court has carefully reviewed the record and concludes Petitioner is not entitled to an evidentiary hearing.  *See Smith v. Singletary*, 170 F3.d 1051, 1053-54 (11th Cir. 1999).  The pertinent facts of the case are fully developed in the record before the Court. *See Cave v. Singletary*, 971 F.2d 1513, 1516 (11th Cir. 1992).   Thus, no additional

evidentiary proceedings are required.  *See High v. Head*, 209 F.3d 1257, 1263 (11th Cir. 2000), *cert. denied*, 532 U.S. 909 (2001) (citing *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)).

## Discussion

In his petition, Petitioner raises 5 grounds for relief, asserting:

1.  The trial court erred in giving lesser-included instructions to the jury after he had stipulated that the victim had received "great bodily harm;"

2.  Sentence as an habitual offender and prison releasee violates statutory authority and Florida's "single subject" rule;

3.  He was denied his right to a fair trial when the trial court denied Petitioner the right to effective assistance of counsel by failing to grant his motion to discharge trial counsel and afford him the opportunity to proceed *pro se*; giving erroneous jury instructions upon requested self defense instruction of justifiable use of none [sic] deadly force that negate the defense to the improper lesser offenses that Petitioner was found guilty of;

4.  Trial counsel was ineffective in (a) failing to call known witnesses to rebut the state's case, (b) advising Petitioner to agree to the stipulation, (c) failing to object to the omission of written instructions on his defense; and (d) failing to object to an allegedly improper statement by the state; and

5.  Appellate counsel was ineffective in failing to raise: (a) the ineffective assistance of counsel claims; (b) denial of right to self-representation, (c) violation of the stipulation, (d) instructional error, (e) violation of double jeopardy in his sentencing, (f) transcription error, and (g) violation of an administrative order.

Grounds One through Four were raised in Petitioner's Rule 3.850 motion and Ground Five was raised in Petitioner's application for state habeas relief.

## Grounds One, Two, and Three

Title 28 U.S.C. § 2254(b) requires the exhaustion of state court remedies before a federal habeas corpus application will be entertained. *See Baldwin v. Reese*, 541 U.S. 27, 33 (2004). *See also Henderson v. Campbell*, 353 F.3d at 891. Respondent seeks dismissal

of Grounds One, Two, and Three on the ground that the claims were presented to the state courts only as a matter of state law and not federal law.  As discussed below, although Petitioner raised these claims in various post-conviction proceedings in the state courts, he failed to make any argument of a federal constitutional dimension in support thereof. *See* Dkt. 15, Ex. 19 at 6, 14-16, 19.

Supreme Court precedents clearly hold that a petitioner must present to the state courts both the operative facts and legal principles that he presents to the federal courts in order to meet the requirement that the state courts be given a fair opportunity to rule on the federal claims raised in a federal habeas proceeding. *Picard v. Connor*, 404 U.S. 270, 277-78 (1971). The state courts must be alerted to the fact that the prisoner is asserting claims under the United States Constitution. *Duncan v. Henry,* 513 U.S. 364, 365-66 (1995); *see also, Isaacs v. Head,* 300 F.3d 1232, 1254 (11th Cir. 2002). Merely presenting the facts in state court necessary to support the federal claim or a somewhat similar state law claim is not sufficient to satisfy the exhaustion requirement. *Anderson v. Harless,* 459 U.S. 4, 6 (1982) (citations omitted).  The petitioner must also articulate the constitutional theory serving as the basis for his claim for relief. *Henry v. Dept. of Corr.,* 197 F.3d 1361, 1366 (11th Cir.1999) (quoting *Gray v. Netherland,* 518 U.S. 152, 153 (1996)).  *See also Baldwin v. Reese*, 541 U.S. 27, 31 (2004). Petitioner fails to meet this burden in Grounds One, Two, and Three.

In Ground One of his petition, Petitioner asserts that the state trial court erred in giving the jury instructions regarding lesser included offenses.  At trial, Petitioner and his attorney stipulated on the record that the doctor who treated the victim would have testified that the victim suffered great bodily harm as a result of the blows struck by Petitioner.

Petitioner asserts that his conviction is illegal because the stipulation precluded his conviction of a lesser included offense (Dkt. 1 at 5).

Contrary to Petitioner's assertion otherwise, he did not raise this issue on direct appeal.  The record reflects that there were only two references made to the stipulation in Petitioner's appellate brief.  The first reference is found in the statement of facts as an acknowledgment that Petitioner stipulated that the victim received injuries sufficient to constitute "great bodily harm" (Dkt. 15, Ex. 12 at 10).   The second reference is found in the discussion of the jury's verdict of guilt on the lesser included charge of battery "even though the issue of great bodily harm had been stipulated to by [Petitioner]" (Dkt. 15, Ex. 12 at 19). Petitioner did not present the argument set forth in his petition in his appellate brief.

When Petitioner raised this claim in his Rule 3.850 motion, he argued that the state trial court violated his "right to equal protection of law, due process of law and a fair trial" when it instructed the jury on the lesser included offenses (Dkt. 15, Ex. 19 at 5).  Merely asserting a violation of "equal protection" and "due process" does not satisfy the requirement that a petitioner give the state court an "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995). Petitioner did not explicitly say that the words "equal protection" and "due process" refer to a federal claim. *Id.*

In Ground Two of his petition, Petitioner contends that his sentence is illegal. Petitioner was sentenced to a term of 5 years under the PRRPA[2] and 10 years as an

---

[2]The Court takes judicial notice of information available at the Florida Department of Corrections Information Network, http://www.dc.state.fl.us/, viewed April 4, 2006.  *See* Fed. R. Evid. 201. Following his conviction in Pinellas County, Florida, of resisting an officer with violence, Petitioner was sentenced on May

(continued...)

habitual felony offender. According to Petitioner, his sentence is illegal because the PRRPA was enacted in violation of Florida's single-subject rule. Petitioner further challenges the legality of imposing "sentencing enhancements" as both a prison releasee reoffender and a habitual felony offender. Finally, Petitioner contends that the Florida legislature's efforts to cure the single subject rule violation of chapter 99-188, Laws of Florida, resulted in the retroactive application of the 2002 legislation to crimes occurring before the legislation took effect, violating the *ex post facto* clause of the Florida constitution. Petitioner raised these claims in his Rule 3.850 motion, but again failed to put the state court on notice that he was asserting a violation of federal dimension.

In the appeal of the denial of his Rule 3.800 motion, Petitioner asserted that his sentence as an habitual felony offender "violates the double jeopardy clause" (Dkt. 23, Appx. A, Attach., Appellate Brief at 2). Petitioner made one reference to the federal constitution, stating that "[t]he application of enhancement penalty outside of a statutory enhanced provision violates double jeopardy clause of the Florida and United States Constitutions," but his entire argument is based on state law only (Dkt. 23, Appx. A, Attach., Appellate Brief at 5). *See Baldwin v. Reese*, 541 U.S. at 33.

In Ground Three, Petitioner asserts that his right to a fair trial was violated when the state trial court  denied his motion to discharge trial counsel.  Premised on Petitioner's assertion that the stipulation precluded conviction on a lesser included offense, he further asserts that the state trial court erred by giving an erroneous jury instruction "that negate[d]

---

(...continued)

5, 1995 to serve a term of 2 years in prison in Case No. 94-13085.  Upon being convicted of the sale and possession cocaine, Petitioner was sentenced on March 28, 1995 to a 37 month term of imprisonment on each conviction in Case No. 94-14240. Petitioner was placed in the custody of the Florida Department of Corrections on May 4, 1995, where he remained until his release on January 16, 1997. *See* Dkt. 15, Ex. 018, Vol. I at 148. The battery that is the subject of the instant petition occurred on August 14, 1999. *Id*. at R. 3.

the defense to the improper lesser offenses that Petitioner was found guilty of" (Dkt. 1 at 8). In his Rule 3.850 motion, Petitioner argued that this error deprived him of a "fair trial" (Dkt. 15, Ex. 19 at 16).  Again, Petitioner did not explicitly say that the words "fair trial" referred to a federal claim.

Petitioner's statement in his Rule 3.850 motion that the state trial court's failure to discharge trial counsel denied him his "due process rights and a fair and impartial trial" is likewise insufficient to alert that court to the federal nature of Petitioner's claim, *see* Dkt. 15, Ex. 19 at 14.  Petitioner's assertion that the state trial court erred in declining a request for an instruction on the justifiable use of non-deadly force that would negate "improper lesser offenses" was likewise not framed as a federal question in state court.

In sum, Grounds One, Two, and Three have not been properly exhausted in state court.  A petitioner's claims or portions of claims which are not exhausted but would clearly be barred if returned to state court must be dismissed.[3]  *See Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993). Here it would be futile to dismiss this case to give Petitioner the opportunity to exhaust the federal dimensions of these claims because they could have and should have been raised on direct appeal. *See* Fla. R. Crim.P. 3.850(g).[4] Because Petitioner did not present his constitutional claims to the state court, they have not been exhausted and are now procedurally barred in state court.

Therefore, unless Petitioner can show either cause and prejudice or that the actual innocence exception applies to these claims, they are procedurally defaulted in this Court.

---

[3]*See, e.g., Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

[4]Also, if the petitioner attempts to raise the claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in federal court.  *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir. 1994), *cert. denied*, 513 U.S. 1185 (1995).

*See, e.g., Coleman v. Thompson,* 501 U.S. at 735 n.1 (if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes). Cause must ordinarily be something external to the defense. *Marek v. Singletary,* 62 F.3d 1295, 1302 (11th Cir.1995). To show prejudice, Petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady,* 456 U.S. 152 (1982).

Petitioner argues that his ineffective assistance of counsel claims satisfy the cause and prejudice requirement. While a properly exhausted ineffective assistance of counsel claim may establish cause for a procedural default, *United States v. Nyhuis*, 211 F3d 1340, 1344 (11th Cir. 2000), in this case, Petitioner's ineffective assistance of counsel claims do not relate to his failure to present the underlying substantive claims to the state court in federal terms.  Thus, Petitioner has not demonstrated cause for the procedural default or resulting prejudice.

Petitioner offers no other reason for his failure to raise these claims in a federal context, and the Court discerns none that would amount to good cause to overcome his default. Having failed to allege, much less show, that any factors external to the defense prevented the presentation of these claims in state court, Petitioner has not shown cause to excuse the default. *See Murray v. Carrier,* 477 U.S. 478 (1986);  *Wainwright v. Sykes*, 433 U.S. 72 (1977).

An exception to the "cause-and-prejudice" requirement was recognized in *Sykes.* Habeas relief would not be barred for a victim of a "miscarriage of justice," referred to as the "actual innocence" exception. *Id*. at  90. A petitioner in a collateral proceeding who wishes to establish his actual innocence to avoid a procedural bar to consideration of the merits of his underlying claim must "demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quotations omitted); *see also Schulp v. Delo*,  513 U.S. 298, 316 (1995). In this context, petitioner must demonstrate that he has newly discovered evidence that if presented at trial would establish factual innocence rather than mere legal insufficiency.  *See Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). Petitioner does not present any evidence of "factual" innocence that was not available at trial. Without such a showing, Petitioner cannot demonstrate a colorable claim of actual innocence. *Id*.

Because Petitioner fails to proffer "specific facts which support a finding that one of these exceptions to the procedural default rule exists," *Hill v. Jones*, 81 F.3d 1015 (11th Cir. 1996), it would be improper for this Court to address the merits of the claims raised in Grounds One, Two, and Three.  *See Kight v. Singletary*, 50 F.3d 1539, 1541 (11th Cir. 1995).

**Grounds Four and Five**

In the remaining two grounds for relief presented in the petition, Petitioner asserts that he was denied effective assistance of counsel at trial and on appeal. To establish a prima facie claim of ineffective assistance of counsel at trial, Petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance is

performance which is objectively unreasonable under prevailing professional norms. *Id.* at 688. Prejudice results when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "[T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776 (1987)).

The *Strickland* standard of review also applies to ineffective assistance of appellate counsel claims. *See Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991), *cert. denied*, 502 U.S. 1077 (1992). In *Jones v. Barnes*, 463 U.S. 745 (1983), the Supreme Court held that the Sixth Amendment does not require appellate advocates to raise every non-frivolous issue. The Court suggested that effective advocates "winnow out" weaker arguments even though the weaker arguments may be meritorious. *Id*. at 751-52.

In its order granting, in part, and denying, in part, Petitioner's Rule 3.850 motion, the state trial court correctly identified *Strickland* as the applicable standard for review of ineffective assistance of counsel claims at trial. Dkt. 15, Ex. 20 at 4. Petitioner's claims that appellate counsel was ineffective were raised in his application for state habeas relief. Although the state district court denied the petition without written opinion, the Eleventh Circuit has held that the decision is entitled to the same deference as if it had entered written findings to support its decision. *See Wright v. Sec. of Dept. of Corr.*, 278 F.3d 1245 (11th Cir. Jan. 22, 2002). Thus, to prevail on his request for federal habeas relief, Petitioner must demonstrate that in reaching the decisions rejecting his claims of ineffective assistance of counsel, the state courts (1) unreasonably applied *Strickland's* two prong test to the facts of his case; (2) unreasonably extended the scope of *Strickland* to a new context

where it should not apply; or (3) unreasonably refused to extend that principle to a new context where it should apply.  *See* 28 U.S.C. § 2254(d). The "unreasonable application" inquiry requires the court to determine whether the application was objectively unreasonable. *Penry*, 532 U.S. at 792; *Williams v. Taylor,* 529 U.S. 362, 409 (2000).

**Trial Counsel**

In Ground Four, Petitioner contends that trial counsel's performance was deficient, In his supporting facts, he faults trial counsel for (a) failing to call known witnesses to rebut the state's case, (b) advising him to agree to the stipulation and then failing to ensure that the court adhered to it (c) failing to object to the lack of written instruction on his defense, and (d) failing to object to an allegedly improper comment by the state.

<u>Failure to call witnesses</u>

Petitioner asserts that trial counsel was ineffective in failing to call Emergency Medical Technicians ("EMT") R. L. Standish, and Brian Kell,  A. Bazdizir, Joseph Baker, Doctor Robert Chuong, and co-workers Marcus Everett,[5] Steven Springman, Sheila Morrison, and Charlie Franks as witnesses during the trial.  According to Petitioner, these individuals would have provided testimony in support for his defense.  The state trial court denied Petitioner's claim as to Standish, Kell, Bazdizir, Baker, Chuong, and Everett and directed the State to file a response to Petitioner's claims regarding prospective witnesses Springman, Morrison, and Franks, finding as follows:

> The Defendant next asserts ineffective assistance of counsel by not presenting the testimony of nine named witnesses. The Defendant asserts that R. L. Standish, Brian Kell, A. Bazdizir, Joseph Baker, Robert Chuong, and Marcus Everett could testify about the extent of the victim's injuries and

---

[5]Notably, the record reflects that the State had been advised that trial counsel was prepared to call Everett to testify on Petitioner's behalf, but Everett "missed his ride" to court (Dkt. 15, Ex. 18, Vol. III at 203).

how they were received. The Court finds this testimony irrelevant and that the Defendant has not shown how the omission of these testimonies prejudiced his trial. The Defendant stipulated that the victim received "great bodily harm." [Exhibit 5 at 160-162]. The Defendant cannot now reasonably claim ineffective assistance of counsel for failure to call witnesses regarding something to which he freely stipulated. The Defendant does not now claim that his stipulation was done in error; therefore, other testimony regarding the extent of the victim's injuries would have either been cumulative or irrelevant. *See Card v. State*, 497 So. 2d 1169, 1176-1177 (Fla. 1988) (counsel cannot be deemed ineffective for failing to present cumulative testimony). Additionally, the Defendant has not shown how the omission of these testimonies prejudiced his trial — his conviction was for the lesser-included offense of battery on an elderly person, a crime where great bodily harm is not an element. *See Odom v. State*, 770 So. 2d 195, 197 (Fla. 2d DCA 1995) (facially sufficient motion alleging counsel's failure to call witness must contain explanation of how the omission prejudiced the outcome of the trial); *Highsmith v. State* 617 So. 2d 825, 826 (Fla. 1st DCA 1993). The Court also finds that the Defendant has not sufficiently pled his motion regarding the additional alleged testimony that Marcus Everett would provide. The Defendant has not shown how the testimony would be relevant or how its omission prejudiced the outcome of the trial. *Id.*

The Defendant also alleges that three additional witnesses, Steven Springman, Sheila Morrison, and Charlie Franks, would testify about a prior threat made by the victim to the defendant or about a knife that the Defendant alleges the victim had. The Court finds that these testimonies could be relevant to the Defendant's claim of self-defense. Accordingly, the State shall show cause whether the Defendant should be entitled to an evidentiary hearing on this matter.

Dkt. 20 at 5-6. After receiving the State's response to the show cause order, the state trial

court entered a written order denying the Rule 3.850 motion, finding:

The Defendant argues that his counsel was ineffective when he did not call Steven Springman, Sheila Morrison, and Charlie Franks to testify. To make a facially sufficient claim of ineffective assistance of counsel for failure to call a witness, a defendant must provide the Court with sufficient detail of the substance of the identified witness's testimony and how he was prejudiced by his counsel's failure to call the witness. *See Adams v. State*, 834 So.2d 302, 303 (Fla. 1st DCA 2002); *Odom v. State*, 770 So. 2d 195, 197 (Fla. 2d DCA 2000) ("this court has held that a facially sufficient motion alleging ineffective assistance of counsel for failure to call witnesses must set forth (1) the identity of the prospective witness; (2) the substance of the witness's testimony; and (3) an explanation as to how the omission of the testimony prejudiced the outcome"). As explained below, the Court finds that the

Defendant's claims are either facially insufficient or that the alleged testimony would have been cumulative; therefore, the Defendant has not shown ineffective assistance of counsel.

In asserting that his counsel was ineffective by not call Steven Springman as a witness, the Defendant states that the witness could have testified about a prior threat the victim made to the Defendant. The State responded stating that this witness had been listed as a State witness and therefore had something damaging to say about the Defendant; and, that there was no basis for the witness as the Defendant's theory of self-defense was not based on any events occurring before the charged confrontation with the victim. While not agreeing that the fact that Springman was listed as a State witness conclusively refutes the Defendant's claim, the Court does agree that there was no basis for the alleged testimony. During his trial testimony there was no mention by the Defendant that the victim had previously threatened him. Exhibit 1, excerpt of November 7, 2000 trial, 178-195. The Defendant even testified that on the day of the incident, it was only the victim's weight, size and a knife allegedly held by the victim that put any fear into the Defendant. Exhibit 1, 190-191. Moreover, on closer review, the Court finds that the Defendant has not sufficiently pled ineffective assistance by his counsel's failure to call this witness. The Defendant only stated that Steven Springman "would show prior threat victim made to Defendant" (sic). The Defendant did not state what the "prior threat" was or even allege that the threat was of any type that could put the Defendant in fear for his own safety; he did not state that he told his defense counsel about the prior threat or Springman's alleged testimony; and, the Defendant has not shown how he was prejudiced by the omission of the testimony.

The Defendant next claims his counsel was ineffective by not calling Sheila Morrison as a witness. The Defendant claims that Morrison would have testified that the Defendant "informed her of victim's knife immediately after incident, that Mr. Sequi testimony is perjuried [sic] and with bia [sic], that no one looked for knife or informed police of knife" (sic). The Court agrees with the State that this claim is also without merit.

Concerning the alleged testimony about Sequi's untruthfulness and bias, the Court finds the Defendant's claim of error about the omission of Morrison's testimony is insufficient. The claim is vague and lacks any explanation of how the omission prejudiced his trial. The Defendant does not state how Sequi was untruthful or biased. He also does not state how anything Sequi said prejudiced his trial. Reviewing Sequi's testimony, the Court notes that Sequi was not present during the battery, did not provide any enlightenment on how the battery occurred, and did later see a knife in the victim's automobile. Exhibit 1, 150-159. To the Defendant's benefit, Sequi testified that the Defendant claimed shortly after the incident that the victim had a knife during the altercation. Exhibit 1, at 158. Because of the testimony to the Defendant's benefit and Sequi's limited testimony about the actual battery, it likely would not have been favorable for the Defendant to have Sequi's testimony shown

to be untruthful. This is especially so where, as explained in the next paragraph, some of Sequi's testimony is the same information that the Defendant alleges Morrison would offer. The Defendant has not shown how the lack of Morrison's testimony regarding Sequi's untruthfulness prejudiced his trial.

Concerning the rest of Morrison's alleged testimony, Sequi, a State witness, testified that the Defendant had claimed shortly after the incident that the victim did have a knife and that no one saw a knife in the laundry room where the incident occurred. Exhibit 1, 150-159. There was no need to call Morrison to give the same testimony. *See Card v. State*, 497 So. 2d 1169, 1176-1177 (Fla. 1988) (counsel cannot be deemed ineffective for failing to present cumulative testimony).

The Defendant also claims error by his counsel not calling Charlie Franks to testify that Franks, "Mr. Sequi and Mr. Everett did take victim away from victim's vehicle, that defendant visited Mr. Sequi home that night and gave description of victim's knife and Mr. Sequi stated that the victim had a knife as described." The Court finds that this claim too lacks sufficient substance and an explanation as to how the omission of the testimony prejudiced the outcome.

As the State points out, the victim testified that two employees went to the truck with the victim after the incident. Exhibit 1, 138-140. The victim also admitted to having a knife in the truck. *Id.* Also, Sequi testified that the Defendant told him that the victim had a knife, that he had given the victim a knife, and that he saw the knife in the victim's truck after the incident. Exhibit 1, 157-158. The Defendant does not allege that Franks witnessed the battery or that Franks has any other beneficial testimony. The Court finds that, at best, Franks' testimony would have been cumulative or otherwise of limited value. [Fn 1] Moreover, the Defendant has not shown any prejudice by the omission of Franks' testimony, most likely because the testimony as generally alleged was stated elsewhere.

[Fn 1]   Regarding the claim that Franks could testify about a conversation between the Defendant and Sequi, the Court agrees with the State that Franks' testimony would be hearsay. Because the Defendant appears to want the testimony for the truth of the matter asserted, it also would likely have be inadmissible. However, because there may have been a basis for its admission, the Court did not consider the admissibility of the testimony in deciding whether counsel was ineffective for failing to call Franks as a witness.

Dkt. 15, Ex. 23. A review of the record confirms the state trial court's finding that Petitioner

fails to demonstrate that trial counsel's decision not to call these individuals to testify on

Petitioner's behalf was objectively unreasonable or that the outcome of the trial would have

been different had the testimony he proffers been heard by the jury.

Other than in claims raised by Petitioner in his post-conviction proceedings, the only reference in the record to Petitioner's disagreement with trial counsel regarding witnesses who should be called in his defense occurred before the trial commenced when Petitioner asked that the state trial court remove trial counsel and grant a continuance. In support of this request, Petitioner asserted, *inter alia*, that trial counsel refused to call certain witnesses[6] to testify on his behalf – witnesses he asserted would establish that he acted in self-defense when he struck the victim.

Petitioner acknowledged during the hearing that trial counsel had informed him that the proposed witnesses had "changed their stories," but argued that they had to be called to testify "to get their credibility before the jury" (Dkt. 15, Ex. 18, Vol. II at Tr. 5).   After hearing Petitioner's complaints, the state trial court judge informed Petitioner that his disagreement with trial counsel's strategy did not necessarily mean that he was entitled to discharge trial counsel.   Petitioner was informed that if trial counsel was discharged, there would not be another attorney appointed to represent him.   When asked if he was prepared to represent himeslf, Petitioner replied, "Your Honor, if I have to do that, I have to do that."

Petitioner then advised the state trial court that he did not have access to the depositions taken and he didn't know what the amended charge was or "what the testimony of the witnesses is now."   The trial court informed Petitioner that if he decided to discharge counsel and proceed *pro se*, he would not be entitled to a continuance.   When queried, the state trial court judge stated "I am saying that the Court has appointed you an attorney.   I

---

[6] During the exchange which followed, Petitioner did not identify any witness by name. Given that Petitioner directs the Court's attention to this portion of the transcript in support of his claim, the Court accepts Petitioner's contention that the witnesses being discussed at that time are the same witnesses identified by Petitioner in his petition.

don't find anything incompetent about his representation" (Dkt. 15, Ex. 18, Vol. II at 7).

Trial counsel then addressed the state trial court, stating:

> [Petitioner] has written me numerous, and lengthy letters, in those letters he has identified people that he assured me would exonerate him in this case, and/or corroborate his claim of self-defense. All but one of those witnesses turned out not to be present during the incident, but I did take the time to investigate and find that out. The last witness was supposed to be his star witness, and she was not listed by the State for some curious reason, and I took her deposition, and low an behold she was present and witnessed the entire the [sic] thing, and she could not explain why she was not listed as a witness, and by learning that she was reluctant to get involved, she is now the main State witness. She showed up at the deposition and was devastated. There is a common thread in the testimony of all these witnesses that is consistent. This is what I tried to explain to [Petitioner] based on my 30 years of experience as a trial lawyer, and what I thought his odds would be with a jury.

Dkt. 15, Ex. 18, Vol. II at 8.

None of the proposed witnesses was present when the confrontation occurred. Since Petitioner personally stipulated that the victim suffered "great bodily injury," testimony regarding his injuries (Standish, Kell, Bazdizir, Baker, Chong, and Everett) would not be relevant to the issue before the jury. Petitioner does not disavow the stipulation – to the contrary, he argued in his petition for state habeas relief that entering the stipulation was "a valid trial strategy" (Dkt. 15, Ex. 35 at 9). Testimony regarding events which occurred before the confrontation occurred (Springman and Morrison) was not relevant to Petitioner's defense because Petitioner testified that he had no reason to be in fear of the victim prior to the incident. According to Petitioner, he only became fearful when he saw that the victim had a pocketknife in his hand. Thus, testimony regarding any prior disagreements between the victim and Petitioner would not be relevant to proving material facts at issue in Petitioner's trial. *See* Fed. R. Evid. 402 and 403; Fla. Stat. § 90.402 and 90.403.

Testimony that the victim walked to his truck and opened the door after the incident occurred could have been presented to impeach the victim's testimony to the contrary. According to Petitioner, this testimony could have been presented by either Everett or Franks. Trial counsel arranged for Everett to testify. Unfortunately, Everett failed to appear because he missed his ride to court. Trial counsel is not ineffective when a witness he has attempted to produce absents himself from trial. *See Williamson v. Moore*, 221 F.3d 1177, 1181 (11th Cir. 2000) (holding that "[c]ounsel cannot be said to be ineffective for failing to call an unavailable witness.") (citation omitted).

According to his statements to the trial court, trial counsel interviewed the witnesses brought to his attention and concluded that their testimony would be of little or no benefit to the defense. If after investigating and interviewing a potential witness, trial counsel decides against calling him to testify in support of his client's defense, the decision is considered a matter of trial strategy. As the Eleventh Circuit noted in *Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994), *cert. denied*, 513 U.S. 1115 (1995), the Supreme Court has mandated a highly deferential review of counsel's conduct, especially where strategy is involved. Intensive scrutiny and second-guessing of attorney performance are not permitted. "Defense counsel's failure to call certain witnesses is not sufficient grounds for a Sixth Amendment claim." *United States v. Hughes*, 635 F.2d 449, 453 (5th Cir. 1981) (citing *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978) (finding that the presentation of testimonial evidence is matter of trial strategy, and since allegations of what witness would have testified are largely speculative, complaints of uncalled witnesses, in support of claims of ineffective assistance of counsel, are not favored)).

Under these circumstances, trial counsel's decision not to call these individuals to testify is not objectively unreasonable.  *See Burger v. Kemp*, 483 U.S. 776, 794 (1987); *Downs v. State*, 453 So. 2d 1102, 1108-09 (Fla. 1984). Trial counsel is likewise not ineffective for failing to produce witnesses who would have provided either inadmissible or cumulative testimony. *See Foster v. Dugger*, 823 F.2d 402, 406 (11th Cir. 1987), cert. denied, 487 U.S. 1241 (1988); *Johnson v. Singletary*, 695 So. 2d 263 (Fla. 1996).

**The Stipulation and Jury Instructions**

Petitioner's next contention is that his attorney was deficient in advising him to agree to the stipulation and then requesting the lesser included instructions because the stipulation effectively waived the lesser included offenses.[7]  In addressing this claim, the state trial court found Petitioner's claim of prejudice vague and conclusory, holding that "[w]ithout more, failure to object to a standard jury instruction does not show that counsel's conduct was below an objective standard of reasonableness expected from a reasonably competent attorney." Dkt. 15, Ex. 20 at 5.

As the state trial court noted in its order rejecting Petitioner's Rule 3.850 motion, Petitioner's conviction was for the lesser-included offense of battery on an elderly person, a crime for which great bodily harm is not an element.  Thus, Petitioner cannot demonstrate that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

As to Petitioner's argument that the stipulation waived all lesser included offenses, *see* Dkt. 2 at 17, Petitioner misconstrues the stipulation.  While, under Florida law, a

---

[7]Petitioner has taken contradictory positions on the stipulation.  While he contends that trial counsel was ineffective for advising him to agree to the stipulation, in his petition for state habeas relief, Petitioner argued that the stipulation "was a valid trial strategy (Dkt. 15, Ex. 35 at 9).

defendant can, with the State's agreement, waive lesser included offenses, *See Jones v. State*, 484 So.2d 577, 579 (Fla. 1986), the record does not reflect a waiver of lesser included offenses.

The State completed its case earlier than anticipated. The doctor who treated the victim had been placed on notice that he would be required to appear to testify at 3:00 p.m. When the doctor had not yet appeared, Petitioner was sworn, and the following exchange occurred:

| | |
|---|---|
| Court: | All right, we have had some discussions regarding the fact that one of the State's witnesses who is a medical doctor has been detained. Your attorney had indicated to me that you are willing to stipulate to the injuries on Mr. Menendez.  I want to make sure that you are in agreement with that, that you did not have a problem with stipulating to those facts? |
| Petitioner: | Your honor, I stipulate that he did sustain some injuries. |
| Court: | Okay. |
| Petitioner: | The extent of those injuries, I can't say what they were. I can't – |
| Trial Counsel: | Glenn, Glenn, this is permanent injury, or great bodily harm. |
| Petitioner: | I can't stipulate to something that I don't know. |
| Trial Counsel: | We understand.  We are not asking you to be a medical expert.  If I can have a moment, Your Honor? |
| Court: | Yes, explain it to him. |
| | (Whereupon, a discussion was held off the record between counsel and the defendant.) |
| Trial counsel: | We will stipulate, Your Honor, that he suffered severe bodily injury. |
| Court: | Okay.  You understand that now? |
| Petitioner: | I – |
| Prosecutor: | I think the terminology is great bodily harm. |

| Trial counsel: | Great bodily harm, yes. |
| Court: | Okay.  I just wanted to make sure you understood that. |
| Petitioner: | Yes. |
| Court: | Let's go ahead and bring the jury back in and the State has one more witness, I guess. |
| | (Whereupon the jury was brought in.) |

Dkt. 15, Ex. 18, Vol. III at Tr. 160-62.

There was no mention of the stipulation having waived lesser included offenses. There is, therefore, no factual foundation for finding that the stipulation to which Petitioner agreed included a waiver of the right to have the jury instructed on the lesser included offense of battery, which is the offense of conviction. In the absence of a stipulation to the contrary, trial counsel was not ineffective for failing to object to the instructions on lesser included offenses.

Finally, the record reflects that the jury was properly instructed.  Petitioner has not shown prejudice of constitutional proportion arising from the stipulation.  Petitioner's trial was not rendered fundamentally unfair because of the jury instructions. Trial counsel is not ineffective for failing to object where there is no legal basis for the objection.

**Failing to Object During Closing Argument**

Petitioner contends that trial counsel was ineffective for failing to object to allegedly improper remarks made by the prosecutor during the State's closing argument. Petitioner argues that "the attack by the prosecutor . . . portrayed Petitioner as a liar and improperly vouched for the state witnesses' credibility" (Dkt. 2 at 18). Petitioner complains that the following comments were improper:

I am about finished up here, but before I go I want you to understand that you are allowed to consider several different things when weighing the

evidence.  You are allowed to consider whether or not the witness had an opportunity to see and know about things which the witness testified.  Every witness that came up here today, Manny, Jose, Bertha, Decina all of them testified about what they saw.  They were unbiased.  Did the witness have an accurate memory?  They all testified as accurately as they remembered.  And they go through a couple of more, most importantly, well not most importantly, I apologize, but very importantly, was it proved that a witness had been convicted of a crime?  There is one person that that applies to. We can use that against him.  He has been convicted of a felony seven times.  That differs him from everybody else.  Nobody else that gave any testimony had been convicted of a felony.  So keep that in mind when you are looking at the pictures and trying to imagine how a push to the face, somebody who apparently had a broken hand at one point, how he is supposed to be able to push and cause that much damage.  You can consider that for yourselves.  Consider that he has been convicted of a felony.

Dkt. 15, Ex. 18, Vol. III at 206-07.

He said that he had training in boxing.  He punches this 65 year old man in the face, 5'5" tall, this man is 6'2" tall, and he punches a person in the face, two to three times.  Guess what is going to happen, there is going to be great bodily harm.  And that is exactly what happened.  End of story.

There was no push.  There is no knife in the face.  Was there any testimony, other than out of his mouth, this seven time convicted felon, that there was a knife in the area.  Jose Sequi came in, he said, "When we looked around we didn't see any knife."  He said that after he had gone away, gone to the hospital and then came back, Manny showed him the knife that was in the truck.

Now, Manny was stumbling, dazed, out of it, after he was pummeled by this gentleman, how was he supposed to have made it over to his truck?  Did anybody testify to that, that he made it over to the truck, other than [Petitioner]? I think it was supposed to be this person Marcus Everett, who missed his ride this morning, Marcus Everett was supposed to also have gone over to this truck.  The same gentleman who was apparently breaking up [Petitioner] from the fight.  Somehow he is supposed to make his way over to the truck too.  And Manny is supposed to be in all of his faculties to know, I better hide the evidence, I better walk over to that truck and stick it somewhere.

That's not what happened folks.  That's not what any of the evidence reflects.

Dkt. 15, Ex. 18, Vol. III at 202-03.

In addressing this claim in the Rule 3.850 proceedings, the state trial court found:

> The Defendant claims he was prejudiced by his counsel's failure to object to the State's comments in closing argument about the Defendant's prior convictions. Attacks on a defendant's credibility including the use of prior convictions are proper. *Johnson v. State*, 747 So. 2d 436 (Fla. 4th DCA 1999); *Burst v. State*. 2003 WL 289262 (Fla. 3d DCA 2003). The Court has reviewed the State's closing argument and finds that the Defendant has not shown any deficient performance by his counsel. [*Exhibit 5*. 198-208].

Dkt. 15, Ex. 20 at 5.

Attorneys have considerable leeway in closing argument to lay out the facts and reasonable inferences to be drawn from them.  In a recent decision addressing this issue, the Florida Supreme Court stated:

> This Court has held that wide latitude is afforded counsel during argument. *See Moore v. State*, 701 So.2d 545, 550 (Fla. 1997); *Breedlove v. State*, 413 So.2d 1, 8 (Fla. 1982). Logical inferences may be drawn, and counsel is allowed to advance all legitimate arguments. *See Thomas v. State*, 748 So.2d 970, 984 (Fla. 1999). The standard jury instructions contain cautions that while the arguments of counsel are intended to be helpful and persuasive, such arguments are not to be taken as sources of the law or evidence.

*Franqui v. State*  804 So.2d 1185, 1195 (Fla. 2001).

A review of the transcript confirms that each of the prosecutor's comments was based on testimony presented during the trial or a reasonable inference drawn from the evidence. Improper remarks will compel habeas corpus relief only if they are so egregious as to render the proceedings fundamentally unfair. *See Cargill v. Turpin*, 120 F.3d 1366 (11th Cir. 1997). "If a reviewing court is confident that, absent the improper remarks, the jury's decision would have been no different, the proceedings cannot be said to have been fundamentally unfair." *Tucker v. Kemp*, 802 F.2d 1293, 1296 (11th Cir. 1986) (en banc), cert. denied, 480 U.S. 911 (1987). Here, besides the victim, two of Petitioner's co-workers were in the room when the crime occurred. The issue at trial was not whether Petitioner struck the victim, but rather when and why he struck.  Was the victim confronting Petitioner face-to-face or had he turned away to leave the building, indicating a desire to retreat?

How many blows were actually struck? Was Petitioner was acting in self-defense?

The evidence at trial was overwhelming on the first two questions and Petitioner's testimony regarding the victim brandishing a knife during the confrontation is contradicted by the testimony of one of the two eye witnesses. The other witness testified that she did not see a knife, although her vision was blocked just before Petitioner struck the victim. Even if the prosecutor's comments were improper, Petitioner has not met his burden of showing that they deprived him of a fair trial, materially contributed to the conviction, or are so inflammatory that the statements influenced the jury to reach a more severe verdict than it would have otherwise. Thus, there was no basis for trial counsel to object to the prosecutor's statements.

Having failed to meet *Strickland*'s two-prong test, Petitioner has not demonstrated a viable ineffective assistance of counsel claim. Petitioner has failed to establish that the state trial court's adjudication of these claims is contrary to or an unreasonable application of clearly established Federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). This ground is, therefore, without merit.

**Appellate Counsel**

In Ground Five, Petitioner contends that Appellate counsel was ineffective in failing to raise: (a) the ineffective assistance of trial counsel claims discussed above; (b) the denial of his right to self-representation, (c) the violation of the stipulation, (d) an error in instructing the jury, (e) a sentencing error, and (f) a transcription error which violated an administrative order.

**Ineffective Assistance of Trial Counsel**

As discussed, Petitioner was not denied effective assistance of counsel at trial. There was no basis, therefore, for appellate counsel to raise this issue on appeal.  No error under *Strickland* has been shown.

**Denial of right to self-representation**

Petitioner asserts that appellate counsel was ineffective for failing to argue that the state trial court violated his right to effective assistance of counsel and his right to self-representation by failing to properly conduct hearings under *Faretta*[8] and *Nelson*.[9]

The public defender was appointed to represent Petitioner in the battery case and on unrelated drug charges. Dkt. 15, Ex. 18, Vol. I at R. 5, 9.  On October 31, 1999, Petitioner notified trial counsel that he did not believe that he was receiving effective assistance of counsel.  A hearing was scheduled on Petitioner's *pro se* motion to discharge counsel (Dkt. 15, Ex. 18, Vol. I at R. 23). At the hearing, Petitioner complained that he was not being kept informed about the progress of his cases.  The state trial court encouraged Petitioner to present any complaint he had about Attorney Welch's performance.

The crux of Petitioner's complaint was that Attorney Welch had entered a plea of not guilty on Petitioner's behalf, which Petitioner believed waived his ability to proceed on a theory of self-defense at trial. When the state trial court judge attempted to explain to Petitioner that his understanding of the law was incorrect, Petitioner would not be dissuaded, arguing that both trial counsel and the state trial court judge were misstating

---

[8]*Faretta v. California*, 422 U.S. 806 (1975) (establishing the procedures to be followed when a defendant seeks to discharge counsel and represent himself).

[9]*Nelson v. State*, 274 So.2d 256 (Fla. 4th DCA 1973) (establishing the procedures to be followed in Florida courts when a defendant seeks to discharge court-appointed counsel on grounds of ineffective assistance).

the law.

After giving Attorney Welch an opportunity to respond, the state trial court found as

follows:

Court:      Mr. Livingston, I didn't interrupt you.  I'd like you [to] give me the same
            courtesy.

            From what you have told me, however, I find that there is no absence
            of contact.  There is no failure on the part of Attorney Welch to do
            anything that he would be required to do, based on the reasonable
            standards of counsel in that position.

            And, basically, I gathered – and I have got some good firsthand insight
            into it this morning – I gather that you don't agree with your attorney's
            legal opinions and you trust your own legal opinion over the attorney's.
            I think you have got a basic problem in that regard, but I don't find that
            that's basis for my finding that Attorney Welch has not rendered
            effective assistance to you.

            I'm going to deny your motion to discharge the Public Defender.  I find
            specifically you have not shown a basis for my finding that he has not
            met the standards required for reasonably competent counsel in this
            matter.

            And having denied that, you are – at this time you are in a position
            where Attorney Welch, of the Public Defender's Office, is your attorney.

            You have a couple of choices.  You can proceed as we are going, and
            I see we have a pretrial set on these cases for December 20ᵗʰ, You can
            hire private counsel, and once private counsel makes an appearance
            on your behalf, then I can allow the Public Defender to withdraw.

            Or number three, you can indicate to me that you want to represent
            yourself and discharge the public Defender, and I will do an inquiry into
            that to see if you have the ability to represent yourself.

Petitioner:  I don't.

Dkt. 15, Ex. 18, Vol. I at R. 51-52.

Petitioner states that he made several other attempts to have the public defender

removed.  The record does not indicate the outcome of the other *pro se* motions he filed,

but he did file a notice of appeal challenging the state trial court's decision denying his

request for dismissal of trial counsel.  Shortly thereafter, the public defender withdrew due

to a conflict of interest and the state trial court appointed a special public defender to represent Petitioner.

At the commencement of trial, the following exchange occurred:

Court:          So, all the elements being the same, Mr. O'Leary, what prejudice would inure to your client with the amended information?

Trial Counsel:  There is none, Judge, but as an officer of the Court I must inform you that I have just been informed by Mr. Livingston that he wishes to continue the trial and dismiss counsel.

Prosecutor:     Judge, at this time I will go ahead and file this information.

Court:          Hold on a second.  Mr. Livingston, do you understand that the enhancement is here, and your sentence if you are convicted?

Petitioner:     Yes, I do.

Court:          Okay.  So, they are taking it up to 30 to life on this amendment. From what I understand the State offered you the opportunity to plead to the 15 today.

Petitioner:     They amended one time.

Court:          They can amend all they want up until the time of trial as long as there is no prejudice, and all the elements that they are pleading are the same, therefore you have been on notice of what they are going to argue.

Petitioner:     They violated several civil rights.  I was punished for their discovery violations, which I filed a motion on that.

Court:          What's their discovery violation?

Petitioner:     Pardon me?

Court           What was their discovery violation?

Petitioner:     The day of trial they amended my affidavit, battery on a 65 year old, aggravated battery charge, right?

Court:          Un-huh.

Petitioner:     They added three more witnesses.  The counsel that I had at that

|   |   |
|---|---|
|   | time informed the Court that there was discovery violation involved, and that he would like to ask for a continuance so he could depo [sic] the three new witnesses. |
| Court: | Okay. |
| Petitioner: | At that time, the Judge gave me possible choices, go to trial with the witnesses that the [sic] had day, if I waive speedy trial.  Under the circumstances my attorney at that time advised me, don't go like that. He said waive speedy trial, and I could challenge the discovery violations and all.  I waived speedy trial, and he did challenge the discovery violations.  Basically, exonerated the State, you know. |
| Court: | Did he get to depose those the [sic] witnesses? |
| Petitioner: | Pardon me? |
| Court: | Were those witnesses later deposed by your attorney? |
| Petitioner: | I don't know whether they were deposed.  I wrote him and told him about them.  He wrote back and told me about the three extra witnesses.  I sent him a copy of the State processed document to the Court, showing him the extra witnesses.  I don't know if they were deposed.  I don't know the reason for the amendment, |
| Court: | Let's talk about this, this is the day that is set for trial here today. The fact of the matter is that now you are requesting a new attorney. |
| Petitioner: | My attorney told me, Your Honor, basically, when he first come and talked to me.  We talked about the trial proceeding, and he instructed me on how to behave in trial, then he let a witness go. For over fourteen months I have been locked up, that he has been knowing about. He told her – he advised me, and I've got the letter here, what are my sentencing guidelines, so when he came to visit me now, this is the second time I've seen him, since he has been on my case.  Now the witnesses who were under oath and given certain statements, I've never seen the discovery on anybody in my case Judge.  I got discovery, but not no depositions in my case.

The officer were taking my statement, and I told him about these statements, and he said those people have changed their stories, I've talked to them.  I said they've changed their stories.  Get them on the stand and tat's a credibility issue.  He said, I can't get that before the jury. You've got to get their credibility before the jury. He has no intent on fighting this case for me, or bringing these issues out.  I don't feel that I should go to trial with him and be convicted of |

a crime that I didn't – I may have did the crime, but I did it for a reason.  You know, I want those self-defense instructions.

Court:  Mr. Livingston, it depends on what the evidence shows and whether you are entitled to that instruction or not.  Obviously, you have a right to be represented by counsel here today, you know, other than what you have just told me, is there anything else that you believe is incompetent about the representation that you have received?

Petitioner:  Your honor, if he is going to take me to trial and he is not going to bring before the Court witnesses who may have given statements, and have changed to my benefit, now it changes against my benefit, and he is not going to bring that out to the jury, I might as well say, Your Honor, sentence me as you please now.  He is not going to stick up for me.

Court:  I'm not sure that he is not prepared to cross-examine witnesses here today, whether he does or not impeach their testimony is a matter of trial strategy.

Petitioner:  I don't see a strategy in there, because he told me wasn't going to do it.

Court:  Just because you disagree with that doesn't necessarily mean that you are entitled to discharge him as your attorney.   Are you prepared to go to trial on your own, representing yourself?

Petitioner:  Your Honor, if I have to do that, I have to do that.  I have got no depositions on nobody in my case.  I have been locked up for fourteen months.  I've got no depositions.  I don't know what amended charge, what's the first thing, what the testimony of the witnesses is now.  I don't know any of that information.

Court:  You understand that you are not going to be entitled to a continuance just because you are going to represent yourself?

Petitioner:  You are saying I am going to get railroaded.

Court:  No, I am saying that the court has appointed you an attorney.  I don't find anything incompetent about his representation.

Petitioner:  Your Honor, I am not going to argue with you.  I am not trying to cause a scene in this courtroom.  But if he is gong to stand up in my defense, you are not going to dismiss him, you are not going to give me a continuance, so he can get certain information to at least try to defend me.  I have no discussions about the particulars in my

|               |                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                   |
|---------------|---|
|               | case, nothing more than a minute back there in the holding cell. |
| Trial counsel: | Judge, if I may be heard, just for the record? |
| Court:        | Un-huh. |
| Trial counsel: | [Petitioner] has written me numerous, and lengthy letters, in those letters he has identified people that he assured me would exonerate him in this case, and/or corroborate his claim of self-defense.  All but one of those witnesses turned out not to be present during the incident, but I did take the time to investigate and find that out.  The last witness was supposed to be his star witness, and she was not listed by the State for some curious reason, and I took her deposition, and low an behold she was present and witnessed the entire the [sic] thing, and she could not explain why she was not listed as a witness, and by learning that she was reluctant to get involved, she is now the main State witness.  She showed up at the deposition and was devastated.  There is a common thread in the testimony of all these witnesses that is consistent.  This is what I tried to explain to [Petitioner] based on my 30 years of experience as a trial lawyer, and what I thought his odds would be with a jury. |
|               | Now, I want to make sure before he foregoes this opportunity to plead to the 15 years, and the jury finds him guilty at the end of the day he is looking at 30 to life.  I just want to make sure that that is on the record. |
| Petitioner:   | Your Honor, may I speak? |
| Court:        | Un-huh. |
| Petitioner:   | I'm ready to go to trial.  I will take care of this in appeal court.  I am going to sit up there and call the man a bald face liar in this courtroom, I'm not usually that type of a person, but he said that there's a common thread through the witnesses – |
| Court:        | I guess we will find out. |
| Petitioner:   | He said that he talked to her just recently, said that he talked to her just recently, and now he is recanting that, well, bring her before the Court.  He said I can't bring that before the jury. |
| Court:        | Well, the State may call her as a witness. |
| Petitioner:   | I will take it to the appeal court. |

Court:          We are gong to pick a jury, Mr. Livingston.

Petitioner:     [Inaudible].

Court:          Sit down and be quiet.  We are going to pick a jury.

Dkt. 15, Ex. 18 at 2-10.

Under Florida law, when a defendant indicates to the trial judge prior to the commencement of trial that he desires to discharge court appointed counsel, the trial judge, in order to protect the indigent's right to counsel, must make an inquiry of defendant as to the reason for his request. If the court finds that a valid reason exists, it should appoint a substitute attorney who is then allowed adequate time to prepare the defense. If no valid reason appears, or defendant did not state a reason, the state trial court must advise defendant that if he discharges his original counsel he is not entitled to appointment of counsel at the State's expense. *See Hardwick v. State*, 521 So. 2d 1071 (Fla. 1988) (adopting the procedure announced in *Nelson v. State*, to be followed when a defendant complains that appointed counsel is incompetent); *Matthews v. State*, 584 So. 2d 1105 (Fla. 2d DCA 1991).

Disagreement with trial counsel's strategy alone is not sufficient to require a *Nelson* hearing.  *Morrison v. State*, 818 So.2d 432 (Fla.), *cert. denied*, 537 U.S. 957 (2002).  If after being advised that he will not be appointed new counsel, a defendant continues to demand dismissal of court appointed counsel, the trial judge may, in his discretion, discharge counsel and require the defendant to proceed to trial *pro se. See Williams v. State*, 427 So. 2d 768 (Fla. 2d DCA 1983); *Nelson v. State*, 274 So. 2d 256 (Fla. 4th DCA 1973).

The record reflects that the state trial court followed this procedure. The state trial

court gave Petitioner the benefit of the doubt and made the proper inquiry before concluding that there was no basis for finding that trial counsel was incompetent to continue representing Petitioner.  No constitutional error has been shown.

As to whether the state trial court erred in not conducting a *Faretta* hearing, both federal and state law require that the defendant make a clear and unequivocal request to represent himself.  *See Faretta v. California,* 422 U.S. 806, 818 (1975).  When before the court, although he did request to discharge trial counsel, Petitioner did not unequivocally request to represent himself.  The record reflects that Petitioner complained about trial counsel's performance but when told that there would not be a continuance if he wanted to discharge trial counsel and exercised his right to self-representation, he did not clearly and unequivocally request to represent himself.  Appellate counsel is not ineffective for failing to raise a meritless claim on appeal.

**The Stipulation and Jury Instructions**

Petitioner argues that appellate counsel was ineffective for failing to assert that the state trial court violated the stipulation that the victim sustained "great bodily harm" by giving instructions on lesser included offenses. As discussed, the parties agreed to the stipulation and the state trial court read the stipulation to the jury at the close of the State's case: "Ladies and Gentlemen of the jury, the State and the defense have stipulated that Mr. Menendez did suffer great bodily harm" (Dkt. 15, Ex. 18, Vol. III at 170).  Petitioner's argument is that the stipulation precluded instructions on lesser included offenses. To the extent Petitioner asserts that appellate counsel's performance was deficient because she failed to assert that trial counsel was ineffective in not objecting when the state trial court instructed the jury on lesser included offenses, as discussed above, the stipulation did not

waive lesser included offenses.  There was, therefore, no issue to raise on appeal.

Petitioner also asserts that appellate counsel was ineffective for not asserting that the state trial court erred in instructing the jury on two lesser included offenses; omitting paragraphs 1, 2, and 3 from the instruction on non-deadly force; and including a statement indicating that Petitioner had a duty to retreat in a non-deadly force instruction.

As Petitioner acknowledges in his claim that trial counsel was ineffective, there was no contemporaneous objection to the reading of the stipulation or to the jury instructions. Where trial counsel did not make a contemporaneous objection at trial, appellate counsel cannot raise the issue on appeal.  *See Bertolotti v. Dugger*, 514 So.2d 1095, 1096-97 (Fla. 1983).  The Court finds that no constitutional violation resulted from appellate counsel's failure to raise this unpreserved issue on direct appeal.  Moreover, as discussed, trial counsel was not ineffective in failing to object to the instructions.

**Illegal Sentence**

Petitioner contends that appellate counsel was ineffective for failing to argue that his sentence was illegal.  Petitioner was sentenced to 10 years as an habitual offender and 5 years under the PRRPA.  Petitioner asserts that appellate counsel was ineffective for failing to argue that the statute was enacted in violation of the single subject rule. Petitioner argued in his state habeas petition that Fla. Stat. § 784.08(2)(c) was a reclassification statute that has its own enhancement penalties, so imposing enhancements under Fla. § 775.084 and § 775.082 subjected him to double jeopardy by causing him to be punished twice for the same conviction.  Petitioner raised his claim that his sentence was illegal in his Rule 3.850 motion.  In its order denying his motion, the state trial court found:

> In his second claim for relief, based on *Taylor v. State*, 818 So. 2d 544 (Fla. 2d DCA 2002), the Defendant asserts that he was sentenced as a prison

> releasee reoffender and as a habitual offender under Chapter 99-188, Laws of Florida, a statute that has been found unconstitutional. Therefore, the Defendant claims he must be resentenced under the valid law in effect at the time of his offense. The Court finds that the Defendant's claim is facially insufficient. The Defendant has not shown or alleged that he was affected by the amendments of Chapter 99-188 Laws of Florida and that he could not have been similarly sentenced according to the laws in effect prior to Chapter 99-188. This claim is denied. *See Bush v. State*, 823 So. 2d 833 (Fla. 2d DCA 2002); *McCarthy v. State,* 835 So. 2d 367 (Fla. 2d DCA 2003).

Dkt. 15, Ex. 12 at 2. While the substantive claim underlying Petitioner's ineffective assistance of appellate counsel claim does not present a basis for federal habeas relief, the claim must be examined to determine whether appellate counsel's performance was deficient.

In the memorandum of law Petitioner filed in support of his petition, Petitioner states that he was sentenced under §784.08 which was subsequently found to be unconstitutional because it was enacted in violation of single subject provision of the Florida Constitution. *See Taylor v. State*, 818 So.2d 544 (Fla. 2d DCA 2002).[10]   However, as Petitioner points out in his memorandum of law, at the time he filed his petition, the constitutionality of chapter 99-188 was pending before the Florida Supreme Court.  Its decision, entered on September 30, 2004, in *Franklin v. State*, is dispositive of Petitioner's claim -- "Chapter 99-188 does not violate the single subject clause of article III, section 6 of the Florida Constitution."  887 So.2d 1063, 1083 (Fla. 2004).  Given the Florida Supreme Court's ruling, appellate counsel's performance was not deficient and in any event no prejudice has been shown.

---

[10]Designated by the legislature as the "Three-Strike Violent Felony Offender Act."  The Florida Supreme Court addressed the issue upon a certified conflict among the district courts of appeal.  The Second District Court of Appeal held in *Taylor v. State* that the Act violated the single subject requirement of article III, section 6.  818 So.2d 544 (Fla. 2d DCA 2002).  The Fifth Circuit Court of Appeals agreed with the Second District.  *See Hersey v. State*, 831 So.2d 679 (Fla. 5th DCA Jul. 26, 2002). The Third Distrcit Court of Appeals held in *State v. Franklin,* that the Act did not violate the constitutional requirement of a single subject and certified conflict with *Taylor.*  836 So.2d 1112 (Fla. 3d DCA 2003).

Petitioner further contends that he was "sentenced to enhancements improperly as a prison releasee reoffender and habitual felony offender."  The Florida Supreme Court held in *Grant v. State* that a defendant cannot be sentenced as both a habitual felony offender and a prison releasee reoffender for the same crime unless the habitual offender sentence would be longer than the sentence imposed under the PRRPA.  770 So.2d 655, 658 (Fla. 2000).  Petitioner's sentence meets this test.  Appellate counsel is not ineffective for failing to raise a claim that is contrary to controlling precedent.

**Transcription of the trial violated an administrative order of the state trial court**

Petitioner complains that he was deprived of an adequate and fair review on direct appeal when appellate counsel failed to insure the accuracy of the transcripts of the hearing held on March 14, 2000 and the November 7, 2000 trial. *See* Dkt. 15, Ex. 37 at 21. Rather than present any argument in his federal petition, Petitioner instead directs the Court's attention to arguments presented in his state habeas petition, *see* Dkt. 15, Exs. 31-39, arguing that appellate counsel "knew or should have known of these meritable omissions but failed to raise the issue," *see* Dkt. 15, Ex. 31 at 31. Notably, that portion of the record Petitioner asserts is incomplete is the same portion of the record Petitioner himself relied on in arguing that the state trial court's inquiry into the reasons he wished to discharge trial counsel was insufficient to satisfy *Nelson*.  See Dkt. 15, Ex. 37 at 7-8.

Petitioner argues, nonetheless, that appellate counsel should have been placed on notice that there were "omissions" in the record because the transcripts do not accurately reflect the allegations set forth in the Petition for Writ of Prohibition he filed on September 13, 2000. The Court has reviewed the Petition for Writ of Prohibition and the transcript of the March 20, 2000 hearing and finds that the assertions in the petition do not present a

basis from which appellate counsel could have been expected to infer that there were any omissions from the record or alterations to the transcripts.

Specifically, Petitioner's references in the Petition for Writ of Prohibition to conversations he had with his attorney prior to the hearing are not a part of the record, and Petitioner's account of what transpired during the hearing is accurately reflected in the court reporter's transcription of the proceedings. Moreover, there are no allegations of omissions from the transcript of the trial on November 7, 2000 mentioned in the Petition for Writ of Prohibition. The only reference to the record and transcripts made by Petitioner in his Petition for Writ of Prohibition is found in his request that the state district court "invoke jurisdiction and deem petitioner insolvent . . and order said records and transcripts from the lower tribunal" (Dkt. 15, Ex. 9 at 8).

Petitioner's statement in his state habeas petition that the "omission during the trial is shown in the letter of February 15, 2002, to appellate counsel," *see* Dkt. 15, Ex. 31 at 24-25, does not support Petitioner's claim.  The order affirming Petitioner's conviction and sentence was entered on February 1, 2002, two weeks <u>before</u> Petitioner asserts he informed appellate counsel of the alleged errors in the record.  Appellate counsel thus had no basis for raising this as a claim on direct appeal.

Petitioner also argues that appellate counsel was ineffective in failing to challenge the method by which the court reporter reported the proceedings.  According to Petitioner, the court reporter's use of a stenomask violated an administrative order entered by the chief judge of the Sixth Judicial Circuit, identified by Petitioner as PA/PI-CIR-00-07. This claim likewise has no constitutional merit.

The record confirms that the court reporter recorded the proceedings verbally using a stenomask (Dkt. 15, Ex. 18, Vol. II at 11).  To provide for meaningful appellate review of convictions in Florida, all criminal proceedings are required to be reported.  *See* Fla. R. Jud. Admin. 2.070.  Rule 2.070 was amended in 1995 to require that each chief judge develop a circuit plan which provides for court reporting services consistent with the Fair Labor Standards Act, as well as other state and federal laws. The 1995 administrative order governing the transcription of judicial proceedings conducted in the Sixth Judicial Circuit was amended on February 8, 2000.  *See* Dkt. 15, Ex. 34, Ex. Z thereto, Court Reporting Plan, Admin. Order PA/PI-CIR-00-07S170007 (2000). This Court has reviewed the administrative order and finds that there is nothing contained therein which precludes the court reporter's use of a stenomask or electronic transcribing equipment during a criminal trial. In any event, Petitioner has not shown that appellate counsel's performance was deficient or that he suffered any prejudice in this regard.  Appellate counsel is not ineffective for failing to raise a meritless claim.

Having failed to meet *Strickland*'s two-prong test, Petitioner has not demonstrated a viable ineffective assistance of appellate counsel claim. The Court finds that Petitioner has failed to establish that the state district court's adjudication of his claims is contrary to or an unreasonable application of clearly established Federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).

**Conclusion**

For the foregoing reasons, the Court finds that Petitioner has failed to establish that he is entitled to federal habeas relief.

ACCORDINGLY, the Court **ORDERS** that:

1.   The Petition for Writ of Habeas Corpus is **DENIED** (Dkt. 1).

2.   The **Clerk** shall enter judgment against Petitioner, terminate all pending motions, and close this case.

**ORDERED** in Tampa, Florida, on April 14, 2006.


/s/ James D. Whittemore
**JAMES D. WHITTEMORE**
**United States District Judge**

SA:jsh
Copy to: Petitioner/Counsel of Record